## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| HANS TIEFENTHALER, on behalf of themselves and others similarly situated, | : : : : | CIVIL ACTION FILE NO. |
| Plaintiff, | : : : | |
| v. | : : : | **COMPLAINT – CLASS ACTION** |
| AMERISAVE MORTGAGE CORP., | : : | **JURY TRIAL DEMANDED** |
| Defendant. | : : : : : | |

_____/

Plaintiff Hans Tiefenthaler (hereinafter referred to as "Plaintiff"),

individually and on behalf of all others similarly situated, alleges on personal

knowledge, investigation of his counsel, and on information and belief, as follows:

## NATURE OF ACTION

1.      This case involves a campaign by AmeriSave Mortgage Corp.

("AmeriSave") to market its products and services through the use of automated

text messages and pre-recorded messages in plain violation of the Telephone

Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the

"TCPA").

2.      On June 12, 2008, the Federal Communications Commission ("FCC" or "Commission") issued a citation to AmeriSave for violations of the TCPA, admonishing AmeriSave that "[i]f, after receipt of this citation, you or your company violate the Communications Act or the Commission's rules in any manner described herein, the Commission may impose monetary forfeitures not to exceed $11,000 for each such violation or each day of a continuing violation."

3.      Notwithstanding these prior violations of the TCPA and the FCC's citation, AmeriSave used pre-recorded messages and a software program to transmit thousands of unsolicited calls and spam text messages to Plaintiff and proposed Class Members for the purposes of marketing its financial products.

4.      By using pre-recorded messages and an automated telephone dialing system to send thousands of automated telemarketing calls and text messages without first obtaining the prior express written consent of recipients, AmeriSave violated the TCPA.

5.      Moreover, AmeriSave made calls and sent messages to cellular telephone numbers that are registered on the National Do Not Call List (hereafter "NDNC"), which is a separate and additional violation of the TCPA.  The recipients of AmeriSave's illegal calls and text messages, which include Plaintiff and the proposed classes, are entitled to damages under the TCPA.

**PARTIES**

6.     Plaintiff Hans Tiefenthaler is, and at all times mentioned herein was, an individual citizen of the Commonwealth of Massachusetts.

7.     Defendant AmeriSave Mortgage Corporation is a corporation incorporated under the laws of the State of Georgia, with its principal place of business at 3525 Piedmont Road NE, 8 Piedmont Center - Suite 600, Atlanta, GA 30305.

**JURISDICTION AND VENUE**

8.     The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA") codified as 28 U.S.C. 1332(d)(2).  The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA.  Further, Plaintiff alleges a national class, which will result in at least one Class member from a different state.

9.     This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

10.    This Court has personal jurisdiction over AmeriSave because the company is incorporated and headquartered in the state of Georgia.  The calls and text messages that are the subject of this case were created and sent by AmeriSave.

11.    Venue is proper in the United States District Court for the Northern District of Georgia because defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced, and because AmeriSave is incorporated and headquartered in Georgia.

## TCPA Background

### Calls Made Using an "Automated Telephone Dialing System" or a Pre-Recorded Message

12.    The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

13.    The TCPA also regulates the use of an automated telephone dialing system ("ATDS") to make calls or send text messages. *See* 47 U.S.C. § 227, *et seq.*; *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

14.    Specifically, the TCPA prohibits the use of an automated telephone dialing system to make any telemarketing call or send any telemarketing text message to a wireless number in the absence of an emergency or the prior express written consent of the called party.  *See* 47 U.S.C.  § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1831 (F.C.C. 2012).

15.    The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." § 227(a)(1)(A)-(B).  The first component of this definition is satisfied when a dialing system has the capacity to call "a given set of numbers" or when "dialing equipment is paired with . . . a database of numbers."  *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14,014, ¶ 133 (2003); *see In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 566 (F.C.C. 2008) (rejecting argument that a dialing system "meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists" and reasoning that "the teleservices industry had progressed to the point where dialing lists of numbers

was far more cost effective"); *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041,

1051 (9th Cir. 2018) (holding that "equipment that made automatic calls from lists

of recipients was . . . covered by the TCPA").

16.    "[T]elemarketing means the initiation of a telephone call or message

for the purpose of encouraging the purchase or rental of, or investment in,

property, goods, or services, which is transmitted to any person."  47 C.F.R. §

64.1200(f)(12).

17.    "[P]rior express written consent means an agreement, in writing,

bearing the signature of the person called that clearly authorizes the seller to

deliver or cause to be delivered to the person called advertisements or

telemarketing messages using an automatic telephone dialing system or an

artificial or prerecorded voice, and the telephone number to which the signatory

authorizes such advertisements or telemarketing messages to be delivered."

47 C.F.R. § 64.1200(f)(8).

18.    With regard to calls or texts made for telemarketing purposes, the

Federal Communication Commission has instructed that sellers may not avoid

liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its
> telemarketing activities to unsupervised third parties would leave
> consumers in many cases without an effective remedy for

telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

19.     In its January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made or a text is sent bears the responsibility for any violations.  *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

20.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."  *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

21.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be

held vicariously liable under federal common law principles of agency for violations of . . . section 227(b) . . . that are committed by third-party telemarketers."[1]

22.     More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  28 FCC Rcd at 6586 (¶ 34).

23.     The FCC has repeatedly rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call.  *Id.* at 6587 n. 107.

24.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, CG Docket No. 11-50, Declaratory Ruling, 28 FCC Rcd 6574, 6574 (¶ 1) (May 9, 2013) ("May 2013 FCC Ruling").

relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd at 6592 (¶ 46).

25.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

26.     Under the TCPA, the burden is on the seller – here, AmeriSave – to have obtained and documented, and to prove, prior express written consent.

The National Do Not Call Registry

27.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

28.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

29.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## FACTUAL ALLEGATIONS

30.     Plaintiff Tiefenthaler is not, and has never been, a customer of Defendant AmeriSave.

31.     At no point has Plaintiff Tiefenthaler sought out or solicited information regarding Defendant AmeriSave's products or services.

32.     Plaintiff Tiefenthaler's telephone number, (608) 239-XXXX, is registered to a cellular telephone service.

33.     On December 21, 2018, Plaintiff Tiefenthaler received the following text message on his cellular telephone:



Friday, Dec 21 • 2:38 PM

John, did you know mortgage rates have hit a 3 month low? Call/Text us now to get started! AmeriSave Mortgage Corporation NMLS ID #1168. Text STOP to end

Dec 21, 2:38 PM

Text message

34.     On March 29, 2019, Plaintiff Tiefenthaler received the following text message on his cellular telephone:



35.     The plain text of the text message received by Plaintiff (cited in the paragraph above) demonstrates that the message was sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.  This message therefore qualified as telemarketing.  47 C.F.R. § 64.1200(f)(12).

36.     The SMS "short code" of 990099 is associated with Defendant AmeriSave, and is identified by AmeriSave as its primary contact number with regard to text messages.[2]

37.     On information and belief, a text message containing an SMS short code is characteristic of a message sent using an ATDS that dials a large volume of telephone numbers from a prepared list.

38.     As a result, the system that sent text messages to Plaintiff Tiefenthaler qualifies as an ATDS pursuant to 47 U.S.C. 227(a)(1)(A).

39.     Moreover, since December 18, 2014, the Plaintiff Tiefenthaler's cellular telephone number has been listed on the NDNC list.  Plaintiff Tiefenthaler's number is used exclusively for residential, non-commerical purposes.

40.     Plaintiff Tiefenthaler's residential telephone number was on the National Do Not Call Registry for more than 31 days prior to the receipt of the first call advertising AmeriSave's goods or services.

41.     Defendant AmeriSave is a "person" as the term is defined by 47 U.S.C. § 153(39).

---

[2] https://www.amerisave.com/sms/

42.   AmeriSave had the ability to prevent unauthorized texts in violation of the TCPA from being placed by automated calling/texting operations conducted by itself or by its vendors or marketing partners.

43.   If AmeriSave sent the texts itself, AmeriSave is directly liable for the telemarketing texts.  However, even if AmeriSave did not send the texts itself, it is still directly liable for the texts made on its behalf because it actively participated in those texts and was positioned to sign-up new business wholly derived from those texts.

44.   AmeriSave was legally responsible for ensuring that its vendors and marketing partners complied with the TCPA, if AmeriSave did not itself initiate the sending of the texts.

45.   If AmeriSave did not send the texts itself, AmeriSave knew (or reasonably should have known) that its vendors or marketing partners were violating the TCPA on its behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct.

46.   The Plaintiff, through counsel, sent a letter to Amerisave regarding the automated text message contact.

47.   However, on June 20, 2019, the Plaintiff received a pre-recorded message call from Amerisave to his cellular telephone number.

48.     The pre-recorded message mentioned lowering mortgage rates.

49.     To verify the company that was making the call, the Plaintiff pressed a button in response to the pre-recorded message to speak with a live individual.

50.     That live individual confirmed they were with Amerisave and then terminated the call.

51.     AmeriSave had the ability to prevent unauthorized pre-recorded calls in violation of the TCPA from being placed conducted by itself or by its vendors or marketing partners.

52.     If AmeriSave sent the pre-recorded calls itself, AmeriSave is directly liable for the telemarketing pre-recorded calls.  However, even if AmeriSave did not send the pre-recorded calls itself, it is still directly liable for the pre-recorded calls made on its behalf because it actively participated in those pre-recorded calls and was positioned to sign-up new business wholly derived from those pre-recorded calls.

53.     AmeriSave was legally responsible for ensuring that its vendors and marketing partners complied with the TCPA, if AmeriSave did not itself initiate the sending of the pre-recorded calls.

54.     If AmeriSave did not send the pre-recorded calls itself, AmeriSave knew (or reasonably should have known) that its vendors or marketing partners

were violating the TCPA on its behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct.

## CLASS ACTION ALLEGATIONS

55.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

56.     Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

57.     Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **Robocall Class:** All persons in the United States who, within four years prior to the commencement of this litigation until the class is certified, received one or more pre-recorded calls on their cellular telephone from or on behalf of AmeriSave Mortgage Corporation.

> **Robotexting Class:** All persons in the United States who, within four years prior to the commencement of this litigation until the class is certified, received one or more telemarketing texts on their cellular telephone from or on behalf of AmeriSave Mortgage Corporation, sent via an automated telephone dialing system.

> **National Do Not Call Registry Class**: All persons in the United States whose telephone numbers were on the National Do Not Call Registry, but who received more than one telephone solicitation telemarketing call or text message from or on behalf of AmeriSave Mortgage Corporation with a 12-month period, since June 1, 2015.

58.     Plaintiff Tiefenthaler is a member of, and will fairly and adequately represent and protect the interests of, these Classes as he has no interests that conflict with any of the class members.

59.     Excluded from the Classes are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

60.     Plaintiff and all members of the Classes have been harmed by the acts of the Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their cell phone battery, and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

61.     This Class Action Complaint seeks injunctive relief and money damages.

62.     The Classes as defined above are identifiable through the Defendants' dialer records, other phone records, and phone number databases.

63.     Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds in each class.

64.    The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

65.    Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

66.    There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

67.    There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

> (a) whether Defendant utilized a pre-recorded message to send calls to the members of the Robocall Class;
>
> (b) whether Defendant utilized an automatic telephone dialing system to send its texts to the members of the Robotext Class;
>
> (c) Whether agents operating on behalf of Defendant utilized an automatic telephone dialing system in sending text messages to members of the Robotext Class;
>
> (d) whether Defendant systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

(e) whether Defendant made calls to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls;

(f) whether Defendant's conduct constitutes a violation of the TCPA; and

(g) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

68.     As a person who received non-emergency telephone calls and texts using pre-recorded message and an automatic telephone dialing system without his prior express consent within the meaning of the TCPA, Plaintiff asserts claims that are typical of each Class member who also received such phone calls and texts.

69.     As a person whose telephone number was placed on the National Do Not Call List and who received more than one call and/or text message in a twelve month period, Plaintiff asserts claims that are typical of the National Do Not Call Registry Class.

70.     Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes.  Plaintiff has no interests which are antagonistic to any member of the Classes.

71.     Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions.  Plaintiff and his counsel are committed to vigorously prosecuting this

action on behalf of the other members of the Classes, and have the financial resources to do so.

72.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

73.     The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

74.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## FIRST CAUSE OF ACTION
**Statutory Violations of the Telephone Consumer Protection Act
(47 U.S.C. 227, et seq.)
on behalf of the Robotext Class**

75.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

76.     AmeriSave violated the TCPA by sending, or causing to be sent via an agent, text messages to the cellular telephones of Plaintiff and members of the Robotext Class using an automated dialer without their prior express written consent.

77.     As a result of the Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Robotext Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

78.     Plaintiff and Robotext Class members are also entitled to and do seek injunctive relief prohibiting the Defendant from advertising their goods or services, except for emergency purposes, using an ATDS in the future.

## SECOND CAUSE OF ACTION
**Knowing and/or Willful Violation of the Telephone Consumer Protection Act
(47 U.S.C. 227, et seq.)
on behalf of Robotext Class**

79.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

80.     AmeriSave violated the TCPA by sending, or causing to be sent via an agent, text messages to the cellular telephones of Plaintiff and members of the

Robotext Class using an automated dialer without their prior express written consent.

81.     As a result of the Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Robotext Class is entitled to treble damages of $1,500 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

82.     Plaintiff and Robotext Class members are also entitled to and do seek injunctive relief prohibiting the Defendant from advertising their goods or services, except for emergency purposes, using an ATDS in the future.

**THIRD CAUSE OF ACTION**
**Statutory Violations of the Telephone Consumer Protection Act**
**(47 U.S.C. 227, et seq.)**
**on behalf of the Robocall Class**

83.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

84.     AmeriSave violated the TCPA by sending, or causing to be sent via an agent, pre-recorded messages to the cellular telephones of Plaintiff and members of the Robocall Class without their prior express written consent.

85.     As a result of the Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Robocall Class members are entitled to an award of $500 in statutory

damages for each and every violation of the statute, pursuant to 47 U.S.C. §

227(b)(3)(B).

86.     Plaintiff and Robocall Class members are also entitled to and do seek

injunctive relief prohibiting the Defendant from advertising their goods or services,

except for emergency purposes, using a pre-recorded voice in the future.

**FOURTH CAUSE OF ACTION**
**Knowing and/or Willful Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. 227, et seq.)**
**on behalf of Robocall Class**

87.     Plaintiff incorporates by reference the foregoing allegations as if fully

set forth herein.

88.     AmeriSave violated the TCPA by sending, or causing to be sent via an

agent, text messages to the cellular telephones of Plaintiff and members of the

Robocall Class using an automated dialer without their prior express written

consent.

89.     As a result of the Defendant's knowing and/or willful violations of 47

U.S.C. § 227 *et seq.*, Plaintiff and each member of the Robocall Class is entitled to

treble damages of $1,500 for each and every violation of the statute, pursuant to 47

U.S.C. § 227(b)(3).

90.    Plaintiff and Robocall Class members are also entitled to and do seek injunctive relief prohibiting the Defendant from advertising their goods or services, except for emergency purposes, using a pre-recorded voice in the future.

## FIFTH CAUSE OF ACTION
### Violation of the Telephone Consumer Protection Act
### (47 U.S.C. 227, et seq. and 47 C.F.R. §§ 64.1200(d))
### on behalf of the National Do Not Call Registry Class

91.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

92.    AmeriSave violated the TCPA and the Regulations by making, or having its agent make, two or more telemarketing calls and/or text messages within a 12-month period on AmeriSave's behalf to Plaintiff and the members of the National Do Not Call Registry Class while those persons' phone numbers were registered on the National Do Not Call Registry.

93.    As a result of the Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and National Do Not Call Registry Class members are entitled to an award of up to $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

94.    Plaintiff and National Do Not Call Registry Class members are also entitled to and do seek injunctive relief prohibiting the Defendant from advertising

their goods or services, except for emergency purposes, to any number on the

National Do Not Call Registry in the future.

## SIXTH CAUSE OF ACTION
**Knowing and/or Willful Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. 227, et seq. and 47 C.F.R. §§ 64.1200(d))**
**on behalf of the National Do Not Call Registry Class**

95.     Plaintiff incorporates by reference the foregoing allegations as if fully

set forth herein.

96.     AmeriSave knowingly and/or willingly violated the TCPA and the

Regulations by making, or having its agent make, two or more telemarketing calls

and/or text messages within a 12-month period on AmeriSave's behalf to Plaintiff

and the members of the National Do Not Call Registry Class while those persons'

phone numbers were registered on the National Do Not Call Registry.

97.     As a result of the Defendant's knowing and/or willful violations of 47

U.S.C. § 227 *et seq.*, Plaintiff and each member of the National Do Not Call

Registry Class is entitled to treble damages of up to $1,500 for each and every

violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

98.     Plaintiff and National Do Not Call Registry Class members are also

entitled to and do seek injunctive relief prohibiting the Defendant from advertising

their goods or services, except for emergency purposes, to any number on the

National Do Not Call Registry in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays

for the following relief:

A.     Injunctive relief prohibiting Defendant from calling telephone

numbers advertising their goods or services, except for emergency purposes, to any

number on the National Do Not Call Registry or to any cellular telephone numbers

using an ATDS and/or artificial or prerecorded voice in the future;

B.     As a result of the Defendant's willful and/or knowing violations of 47

U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Robocall Class and

Robotext Class member treble damages, as provided by statute, of $1,500 for each

and every violation of the TCPA;

C.     As a result of Defendant's statutory violations of 47 U.S.C.

§ 227(b)(1), Plaintiff seeks for himself and each Robocall Class and Robotext

Class member $500 in statutory damages for each and every violation of the

TCPA;

D.     As a result of the Defendant's willful and/or knowing violations of 47

C.F.R. § 64.1200(d), Plaintiff seeks for himself and each member of the National

Do Not Call Registry Class treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

E.      As a result of Defendant's statutory violations of 47 C.F.R. § 64.1200(d), Plaintiff seeks for himself and each member of the National Do Not Call Registry Class up to $500 in statutory damages for each and every violation of the TCPA;

F.      An award of attorneys' fees and costs to counsel for Plaintiff and the Class as permitted by law;

G.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing appropriate Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes; and

H.      Such other relief as the Court deems just and proper.

## **<u>JURY DEMAND</u>**

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Dated: June 21, 2019          PLAINTIFF, on behalf of himself
                                              and others similarly situated,

                                              By:  _/s/ Jason Doss_

Jason Doss
Georgia Bar No. 227117
Email:  jasondoss@dossfirm.com
THE DOSS FIRM, LLC
The Brumby Building
127 Church Street, Suite 220
Marietta, GA 30060
Telephone: (770) 578-1314
Facsimile:  (770) 578-1302

Jonathan D. Selbin (*pro hac vice* to be filed)
Email:  jselbin@lchb.com
Lieff, Cabraser, Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Daniel M. Hutchinson (*pro hac vice* to be filed)
Email:  dhutchinson@lchb.com
Lieff, Cabraser, Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Anthony Paronich (*pro hac vice* to be filed)
Email:  anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100

Matthew R. Wilson (*pro hac vice* to be filed)
Email:  mwilson@meyerwilson.com
Michael J. Boyle, Jr. (pro hac vice to be filed)

28

Email:  mboyle@meyerwilson.com
MEYER WILSON CO., LPA
1320 Dublin Road, Suite 100
Columbus, OH 43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE WITH L.R. 5.1.C & 7.1.D

Pursuant to L.R. 7.1.D, I certify that this document has been prepared with

14-point, Times New Roman font, approved by the Court in L.R. 5.1.C.

*/s/  Jason Doss*